## Case No. 6,758.

HOWARD et al. v. CROMPTON et al.

[14 Blatchf. 328.] [1]

Circuit Court, N. D. New York. Sept. 24, 1877.

BANKRUPTCY – PAYMENT TO BANKRUPT WITHOUT ACTUAL NOTICE—REMEDY OF ASSIGNEE.

1. H., who was a debtor to a bankrupt at the time of the commencement of the proceedings in bankruptcy, thereafter and before the adjudication of bankruptcy paid the debt to the bankrupt, without any actual notice or knowledge of the pendency of the bankruptcy proceedings, and in the usual course of business, but the money thus paid did not come to the hands of the assignee in bankruptcy. The assignee brought suit against H. to recover the debt: *Held*, that the suit could be maintained.

[Cited in Sicard v. Buffalo, N. Y. & P. R. Co., Case No. 12,831.]

2. Whether the district court can try an action at law otherwise than by a jury, suggested.

[See Babbitt v. Burgess, Case No. 693.]

[Error to the district court of the United States for the Northern district of New York.]

[This was an action of debt by John Crompton and others, assignees in bankruptcy of A. Miller & Co., against Jacob R. Howard and others. The district court gave judgment for plaintiffs, and defendants bring error.]

Levi H. Brown, for plaintiffs in error.

Seymour & Weaver, for defendants in error.

JOHNSON, Circuit Judge. This is a writ of error to the district court. The important question presented by counsel, upon the argument, is, whether the assignees of the bankrupts can maintain an action against persons who were debtors of the bankrupts at the time of the commencement of the bankruptcy proceedings, to recover the amount of such debt, notwithstanding the facts, that, before the adjudication of bank-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

ruptcy was made, but after the commencement of the proceedings, the debtors paid to the bankrupts the full amount of their debt, without any actual notice or knowledge of the pendency of the bankruptcy proceedings, and in the usual course of business, the money thus paid not having come to the hands of the assignees. It was determined, in the district court, that the action could be maintained.

But for the fact of payment, there could, of course, be no question of the right of the assignees to maintain the suit. Section 14 of the bankrupt act of March 2, 1867 (14 Stat. 522), directs the judge or register to assign and convey to the assignee, by an instrument under his hand, all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and enacts, that "such assignment shall relate back to the commencement of said proceedings in bankruptcy, and that thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings;" and, after some further provisions, not material to be stated, it goes on to say: "All the property conveyed by the bankrupt in fraud of his creditors; all rights in equity, choses in action, patents and patent rights, and copyrights; all debts due him, or any person for his use, and all liens and securities therefor; and all his rights of action for property or estate, real or personal, and for any cause of action which the bankrupt had against any person, arising from contract, or from the unlawful taking or detention, or of injury to the property of the bankrupt, and all his rights of redeeming such property or estate, with the like right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend the same, as the bankrupt might or could have had, if no assignment had been made, shall, in virtue of the adjudication of bankruptcy, and the appointment of his assignee, be at once vested in such assignee; and he may sue for and recover the said estate, debts, and effects."

The time of the commencement of the proceedings in bankruptcy is defined, by section 38, to be the time of the filing of the petition for adjudication. It is to that time that the effect of the assignment relates, which carries to the assignee the property then owned by the bankrupt. It does not carry that which he subsequently acquires, whether by his own industry or by any other mode of acquisition. This period is fixed for the operation of the transfer of all the bankrupt's estate, real and personal—terms broad enough to carry every property interest. If, as is suggested, there is an ab-

sence of these words of reference in the clause of the 14th section which is above quoted, beginning with the provision in regard to property conveyed in fraud of creditors, it is still to be considered, that some time must be fixed as that which this part of the section refers to. It must be either the time of the commencement of the proceedings, or the later time of the appointment of the assignee. If it be the latter, then the extraordinary and irrational result will follow, that, as to some species of property, the creditors take that, and that only, which the bankrupt has at the beginning of the proceeding, while, in regard to other species of property, that, and that only, which he has at the appointment of the assignee, can be taken for the creditors. Such a rule is inconceivable, and may be unhesitatingly rejected by the court, as not a possible legislative intent. I have no doubt that the relation back to the time of the commencement of the proceedings applies to every species of property interest, and marks the division between the ownership of the assignee, in reference to the past, and the ownership of the bankrupt, in respect to the future, acquisitions of the bankrupt. If this be the true sense of the provisions spoken of, then the assignees' title took effect, by relation, established by the statute, as of the named period, and effect must be given to it accordingly. That hardship and injustice may ensue in particular cases, is to be regretted, but does not warrant the court in disregarding the will of the legislature. In legislating on such a subject, a stringent and absolute rule prevents certain possibilities of fraud, very necessary to be guarded against, while it does render it possible that particular hardships may, in consequence of such rules, be brought about, but the weighing of the advantages of the one rule or the other belongs not to the courts, but to the legislature. It is said, that relation to another time is a fiction of law, and that law will not permit a fiction to work injustice. This is certainly true of those fictions introduced into the law for purposes of convenience, but has no reference to such as the legislature has established, to subserve the legislative policy of the laws. Upon this subject, the observations of Chief Justice Tindal, in Balme v. Hutton, 9 Bing. 471, 524, are instructive, and throw much light upon all the questions involved in this part of the case. He says: "It has been observed, in one case, that this relation is a fiction of the law, and that fictions are not to be favored. But I must confess myself unable to consider it as any fiction at all; for, it appears to be the direct positive enactment of the legislature, expressed in plain and unequivocal terms. That such an enactment is, indeed, attended, in some cases, with hardship, must be admitted, but there seemed to have been no alternative for the legislature but either to allow these individual cases of hardship, or to submit to a general inconvenience; for, unless the assignees were made to take the property of the bankrupt as it stood at the time of the bankruptcy, this general inconvenience must follow, that the estate would be subject to all the fraudulent or improvident dispositions and conveyances which failing men, in a state of bankruptcy, will inevitably have recourse to. That such relation was intended is evident from the consideration, that, in various instances, where the individual hardship was greater than was warranted by the general convenience, the legislature has, from time to time, by new statutes, cut down the relation, in particular cases; as, first, in the case of payment of debts to the bankrupt before notice of an act of bankruptcy (1 Jac. I. c. 15); next, in the case of the sale of real property by the bankrupt, where the commission is not sued out within five years after the secret act of bankruptcy (21 Jac. I. c. 19); again, in the case of payments by the bankrupt to creditors, for goods sold (19 Geo. II. c. 32); and, lastly, in the case of conveyances, contracts, and other dealings and transactions with bankrupts, bona fide made and entered into more than two calendar months before the date and issuing of the commission (46 Geo. III. c. 65). All which provisions of the legislature do prove and establish two points, first, that such relation to the act of bankruptcy did at the time exist under the previous enactments; and secondly, that nothing short of the authority of parliament itself was sufficient to relax the severity of the former law. The courts of law have uniformly held such construction of the bankrupt acts. I will refer to one case only, namely, the judgment of Lord Hardwicke, when chancellor, in Billon v. Hyde, 1 Ves. Sr. 326; because it appears to me to import that, at that time, he did not consider this relation to the act of bankruptcy to be a fiction of law. Lord Hardwicke observes: 'It is said that this rule (the relation to the act of bankruptcy), founded on this act of parliament, is contrary to the general reason of the law, which says, that fictions of law and legal relations shall not enure to the wrong of any one, which is the general rule, invented to support the right and equity of the case. But the reason of taking this case out of that rule is plainly this, and the law did intend it, on this general rule, that it is better to suffer a particular mischief, than an inconvenience; and the legislature foresaw that there would be a particular mischief which they cured by that proviso, but did not extend it further, because, the inconvenience, on the other hand, of suffering bankrupts to dispose of their effects by contracts or judgments, would put it in their power to defeat their just creditors of their debts, so that it would be difficult, commonly, to find out whether

there was a mixture of fraud; so the legislature thought it better to lay down that general rule.'" The legislation of England has introduced exceptions to the generality of the relation back, created by their bankrupt laws, from time to time, thus mitigating the severity of the operation of those laws upon persons innocent of any wrongful intention. The first of these, in the order of time, was the statute 1 Jac. I. c. 15, § 14, which enacts, that no debtor of the bankrupt shall be endangered for the payment of his or her debt, truly and bona fide, to any such bankrupt, before such time as he shall understand or know that he is become a bankrupt. If that were the law of the United States, as it was, and substantially is now, the law of England, the payment by the plaintiffs in error involved in this case would be protected. But, unfortunately for them, the congress, in its wisdom, did not enact that or any equivalent provision, and the courts have no authority to introduce it. Various English cases are referred to in the brief of the counsel for the plaintiffs in error, containing expressions which seem to favor his views on this subject, but they all are founded upon one or more of the exceptions which have been, from time to time, introduced into the English statute law. Those cases afford no ground for saying that the courts have any power to give relief, but rather the contrary, because, the exceptions were introduced only by the direct provisions of the statutes referred to. The counsel for the plaintiffs in error endeavors to import into the law a necessity for notice, such as the English statutes, and the English cases founded upon those statutes, require; but, as those requirements of the English statutes do not form part of ours, there is no warrant for that course.

Without further pursuing the subject, I find no ground for doubt that the decision of the district court was correct. The payment, though innocently made, having been made after the commencement of the bankruptcy proceedings, and the money not having come to the hands of the assignees, did not extinguish the debt, and the right to recover is unaffected.

As no question has been made as to the mode of trial pursued in this case by the mutual consent of the court and counsel, I do not feel called upon to consider its propriety, further than to refer to certain sections of the Revised Statutes, which bear upon the subject (sections 566, 649, 700), and to remark that the two sections last referred to relate only to the circuit court. The judgment must be affirmed.